# HAUSCHILD *v.* SPEIDEL.

PATENTS; INTERFERENCE; AMENDMENTS; PRIORITY; DILIGENCE.

Where the junior party to an interference, prior to the filing date of his adversary, which is relied upon for disclosure and reduction to practice, filed amendments to an application then pending, disclosing the invention of the issue, which amendments were rejected as constituting new matter, and he was diligent in filing his application in interference, it was *held*, that he was entitled to an award of priority.

No. 1168. Patent Appeals. Submitted January 13, 1919. Decided March 3, 1919.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding. *Affirmed.*

The facts are stated in the opinion.

*Mr. R. M. Everett* for the appellant.

*Mr. B. G. Foster* and *Mr. C. G. Campbell* for the appellee.

Mr. Chief Justice SMYTH delivered the opinion of the Court:

Robert Hauschild, by his assignee, Charles Becker, appeals from a decision against him in an interference proceeding relating to a process for soldering chain links made from wire in which the solder is contained as a core. The issue is expressed in eight counts, of which 1, 2, 6, and 7 are typical. They read:

"1. A process of soldering chain made from solder wire, consisting in coating the chain with a soldering salt, removing the said coating except from the joint surfaces, and then closing the joints by heating the chain with said joints so coated and the rest of its surface bare or uncoated with soldering salt.

"2. A process of soldering chain made from solder wire, consisting in coating the chain with a soldering salt, removing the said coating except from the joint surfaces of the links, and then closing the joints with a soldering flame."

"6. Process of preventing intersoldering of solder-cored metal chain links, consisting in applying a deoxidizer to the work piece, removing it again therefrom except at the joints, heating the work piece until a compound of the metal component of the shell of the links is produced on the surface of the links, and then continuing the heat to the fusing point of the solder core, substantially as set forth.

"7. In the method of automatically soldering chains, applying a flux to the joints of the links, removing the surplus flux, and subjecting the joints to an oxidizing heat capable of fusing the solder."

When heat was applied to the solder for the purpose of forming a joint, the solder would run out from the joints and freeze the links together, thus producing what is called stiff solder. How to overcome this was the problem which claimed the attention of the inventors.

Eugen Speidel obtained a patent for a process relative to the subject in February, 1912, upon an application filed April 22, 1910. While this application was pending he presented certain

amendments. One was filed in August, 1910, one in February, 1911, and one in May, 1911. All were objected to by the Examiner as constituting new matter. The application here involved was filed by him February 23, 1912. Hauschild's application was filed October 14, 1911. The Examiner gave the claims to Hauschild. His action was reversed by the board of Examiners in Chief, and on appeal the Commissioner in a carefully prepared opinion affirmed the board.

Hauschild asserts that the process revealed in his application is different from that disclosed in Speidel's patent; but admits that there is no difference between his process and the process of Speidel's present application. He urges, however, that since Speidel did not reduce to practice until February, 1912, his filing date, he, Hauschild, having filed in October, 1911, is entitled to priority.

We agree with the Commissioner that there is no difference between the process of the Speidel patent and that disclosed in Hauschild's application. He says: "If it be a fact as contended by Hauschild, that diluted sulphuric acid will not form a protective coating on the copper, but will assist only in removing the borax crystals, then the same is true of the process in which the chain is treated with sawdust moistened with diluted sulphuric acid. On the other hand, if in Speidel's process the acid does form a protective coating, then necessarily it must do the same in Hauschild's process, where the sand is similarly moistened." Moreover, if we accept the Hauschild theory that the preheating apparently contemplated by the claim means only that as the metal is raised to a soldering temperature, oxide is first formed, the invention was disclosed by Speidel when he tendered the amendments to his original application, which we have referred to above.

In the amendment of February, 1911, he said: "I can make use of the oxid coating which forms *eo ipso* upon the heat at the soldering place being gradually raised to the point of melting the solder core." This was repeated in the following May, when he withdrew the amendments. Each date being prior to Hauschild's filing date, Speidel is entitled to prevail if he was

diligent between the date of his disclosure and the filing of his present application. Both parties were residents of Germany. The Patent Office letter informing Speidel that his amendments contained new matter was mailed on July 17, 1911. In the following October he canceled the new matter, stating that he removed it "for probable presentation elsewhere." Within four months after this he filed the present application. Considering the fact that he was a resident of Germany and the time necessary to communicate between the two countries, we think he was diligent and therefore is entitled to a date of disclosure prior to that of Hauschild.

The decision of the Commissioner is affirmed and priority of invention of the subject-matter awarded to Eugen Speidel.

*Affirmed.*